THEODORE J. BOUTROUS, JR., SBN 132099
tboutrous@gibsondunn.com
MICHAEL H. DORE, SBN 227442
mdore@gibsondunn.com
JILLIAN LONDON, SBN 319924
jlondon@gibsondunn.com
MARISSA MULLIGAN, SBN 319734
mmulligan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 S Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

SARAH MATTHEWS, SBN 294864
sarah.matthews@propublica.org
PROPUBLICA
115 Avenue of the Americas, 13th Fl.
New York, NY 10013
Phone:  (212) 514-5250

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRO PUBLICA, INC., | Civil Action No. **'22 CV 1455 BTM KSC** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| COMMANDER DEREK D. BUTLER, JAGC, USN; VICE ADMIRAL DARSE E. CRANDALL, JR., JAGC, USN; CARLOS DEL TORO; CAROLINE D. KRASS; and LLOYD J. AUSTIN, III | |
| Defendants. | |

105730174.10

Gibson, Dunn &
Crutcher LLP

## NOTICE OF PARTY WITH FINANCIAL INTEREST

Pro Publica, Inc. ("ProPublica") is a Delaware nonprofit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code.  It has no statutory members and no stock.

Dated: September 27, 2022

  _/s/ Theodore J. Boutrous, Jr._

Theodore J. Boutrous, Jr.

_Counsel for Plaintiff_

Gibson, Dunn & Crutcher LLP

105730174.10

2

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

Plaintiff Pro Publica, Inc. ("Plaintiff" or "ProPublica"), by and through its undersigned attorneys, alleges against Defendants Commander Derek D. Butler; Vice Admiral Darse E. Crandall Jr.; Carlos Del Toro; Caroline D. Krass; and Lloyd J. Austin, III (collectively, "Defendants"), as follows:

## INTRODUCTION

1.      ProPublica is a nonprofit news organization that publishes investigative journalism in the public interest.  ProPublica brings this case on behalf of the public and press to obtain an immediate injunction preventing the United States Navy and its officers from continuing its unconstitutional policy of denying timely public access to military court records.  This matter is extremely urgent because the Navy is using this policy to unlawfully shield from public view *all* court records—aside from two documents that favor the prosecution—in the high-profile trial of Seaman Apprentice Ryan Mays, currently under way on the San Diego Naval Base.  *See United States v. Mays*, SR/E-1, USN (the "*Mays* case").

2.      Mr. Mays is being prosecuted for allegedly setting the fire that destroyed the *U.S.S. Bonhomme Richard* warship in July 2020.  His trial is likely to conclude on September 29, 2020.

3.      The Navy is attempting to keep secret numerous court records that call into question its controversial prosecution of Mr. Mays, as well as docket information that would allow the public to meaningfully follow these proceedings.  The withheld court records include, among others, the Navy's own preliminary hearing officer's report recommending that the case *not* proceed to trial due to a lack of evidence, multiple motions by the defense, including one claiming the Navy's refusal to disclose these records violates his Sixth Amendment right to a public trial, a motion by the government to exclude from evidence the Navy's *own* report documenting widespread safety failures leading up to the fire, and the military judge's written orders on such motions.

105730174.10

Gibson, Dunn & Crutcher LLP

4.      There is no legitimate basis for withholding these records.  ProPublica understands they have been discussed in open court, and they are not under seal, classified, or otherwise restricted in any way.  Court records of this kind would be available to the public in any other criminal court in the country.

5.      The Navy's policy of withholding these records from the public while they are timely and newsworthy amounts to government-imposed censorship.  It deprives the press and public of information needed to meaningfully understand these proceedings as they are occurring and to assess whether justice is ultimately done.  This constitutes a clear violation of the press and the public's First Amendment and common law rights of access to court proceedings and records.  Absent immediate injunctive relief by this Court, ProPublica and the public will suffer irreparable harm.

6.      Commander Derek D. Butler, the military judge presiding over Mr. Mays' case, has denied both ProPublica's motion to release the records, as well as Mr. Mays' own motion to release the records.  Commander Butler's position was that he lacks the authority to order the release of any court records under Article 140a of the Uniform Code of Military Justice.

7.      Commander Butler's interpretation of Art. 140a was based on 2018 guidance issued by the former Department of Defense General Counsel Paul C. Ney, Jr. (the "Ney Memo") and instructions from the Navy's Office of the Judge Advocate General ("OJAG") issued pursuant to the Ney Memo in 2020.  Article 140a provides that "The Secretary of Defense . . . shall prescribe uniform standards and criteria for conduct . . . at all stages of the military justice system . . . including pretrial, trial, post-trial, and appellate processes, using, insofar as practicable, the best practices of Federal and State courts[.]"  Among the different types of conduct the Secretary of Defense is supposed to prescribe standards for is the "facilitation of public access to docket information, filings, and records . . . ."  10 U.S.C. 940a ("Art. 140a" or the "Article").

Gibson, Dunn & Crutcher LLP

8.      Upon information and belief, neither Secretary of Defense Lloyd J. Austin III, nor his predecessor, has issued such uniform standards and criteria for conduct as required by the Article.

9.      The Criminal Law Division of OJAG has similarly refused to disclose these records, also citing Art. 140a.

10.      But contrary to Commander Butler's and OJAG's interpretation, Congress adopted Art. 140a in 2016 precisely to *ensure timely public access* to court-martial records and docket information—not to be used as a shield to *prohibit* the release of such records.  Indeed, the Army has published court records in high-profile court-martial proceedings such as this within 24–48 hours and, unlike the Navy, publishes docket information that includes the full name of the accused and the various proceedings that have occurred in each case.  *See* U.S. Army Court-Martial Public Record System*,* https://www.jagcnet.army.mil/ACMPRS/cases/docket-case-list. Similarly, military commission proceedings in Guantanamo release unclassified court records within one business day and publish meaningful public dockets for each of those cases.[1]

11.      ProPublica and a coalition of 39 of the top news media and journalism organizations around the country submitted a letter to Defense Department General Counsel Caroline D. Krass, asking that she issue corrected guidance on Art. 140a to ensure the prompt release of the records in the *Mays* case as well as docket

---

[1]      U.S. Dep't of Def., Regulation for Trial by Military Commission, ch. 19, https://www.mc.mil/portals/0/2011%20regulation.pdf; *see also* https://www.mc.mil/CASES.aspx.

Gibson, Dunn & Crutcher LLP

information.[2]  That letter, as well as another letter filed in support of ProPublica's by the National Institute of Military Justice ("NIMJ"), has gone unanswered.[3]

12.     ProPublica has no other avenue to secure release of these court records and docket information, other than through this action.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action and personal jurisdiction over defendants pursuant to 28 U.S.C. §§ 1331 and 1361.  Declaratory relief is available pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201.

14.     Venue lies in this district under 28 U.S.C. § 1391(e)(1) because defendants are officers and employees of the United States or its agencies operating under color of law, and a substantial part of the events or omissions giving rise to these claims occurred and are occurring in this judicial district.

## PARTIES

15.     Plaintiff ProPublica is an independent, nonpartisan, nonprofit newsroom that produces investigative journalism with moral force.  With a team of over 100 dedicated journalists across the country, ProPublica covers a range of topics including, among others, government, politics, and criminal justice.  It has reported extensively on the Navy and other Armed Services and will continue to do so.  Founded in 2007, ProPublica has won numerous awards, including six Pulitzer Prizes.  Most recently, ProPublica reporters Megan Rose, T. Christian Miller, and Robert Faturechi won the 2020 Pulitzer Prize for national reporting for their investigation into America's 7th Fleet after a series of deadly naval accidents in the Pacific.  *See* https://www.pulitzer.org/winners/t-christian-miller-megan-rose-and-robert-faturechi-

---

[2]     Media Coalition Letter to Caroline D. Krass (Sept. 13, 2022), https://www.documentcloud.org/documents/22415281-2022-09-13-us-v-mays-news-media-coalition-letter.

[3]     ProPublica did not hear from Ms. Krass's office until it notified her of this lawsuit.  On today's date, an official from her office stated she was "reviewing the matter," but declined to provide a substantive response to the request for court access.

Gibson, Dunn & Crutcher LLP

propublica.  ProPublica is a 501(c)(3) corporation incorporated in Delaware, with its principal place of business at 155 Avenue of the Americas, 13th floor, New York, NY 10013.

16.     Vice Admiral Darse E. Crandall Jr. is the senior uniformed attorney in the U.S. Navy and commanding officer of the Judge Advocate General Corps of the U.S. Navy.  In that capacity, he is the principal legal advisor to the Navy Chief of Staff and Secretary of the Navy on matters of military justice and is responsible for interpreting laws applying to the Department of the Navy, formulating policies and procedures in regard to review of courts-martial and managing the administration of military justice in the Navy.  His predecessor, John G. Hannink, issued the 2020 JAG instructions that form part of the basis for the Navy's current position denying public access to the court records in the *Mays* case and other court-martial proceedings.  JAG Instr. 5813.2, https://www.jag.navy.mil/library/instructions/JAGINST_5813.2.pdf.  Vice Admiral Crandall is named in his official capacity only.

17.     Defendant Carlos Del Toro is Secretary of the Navy and, in that capacity, is directly superior to Vice Admiral Crandall.  He is named in his official capacity only.

18.     Defendant Caroline D. Krass is General Counsel to the Department of Defense and in that capacity should issue corrected guidance on how the services must interpret Art. 140a.  Her predecessor, Paul C. Ney, Jr., issued a memorandum in 2018 that the Navy has cited, along with its instructions, JAG Instr. 5813.2, as the basis for its decision to deny public access to the court records in the *Mays* case and other court-martial proceedings.  Ms. Krass is named in her official capacity only.

19.     Defendant Commander Derek D. Butler is the military judge who has been designated by the Navy to preside over the *Mays* case.  He is the military judge that denied ProPublica's motion to release the court records at issue here, as well as

Gibson, Dunn &
Crutcher LLP

105730174.10

7

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

Mr. Mays' own motion to release the records.  He is an officer in the U.S. Navy and military employee of the Department of Defense.

20.    Defendant Lloyd J. Austin, III is the Secretary of Defense, the chief executive officer of the Department of Defense, the agency of the U.S. government charged with coordinating and supervising all functions of the government concerned with the Armed Forces of the United States.  He is required under Article 140a to prescribe "uniform standards and criteria for" the "facilitation of public access to docket information, filings, and records. . . ."  He is named in this action in his official capacity only.

## FACTUAL ALLEGATIONS

**ProPublica's interest in the *United States v. Mays* court-martial and efforts to secure release of the court record and docket information**

21.    In July 2020, a fire destroyed the U.S.S. *Bonhomme Richard*, marking "one of the worst noncombat warship disasters in recent memory."  *Sailor facing court martial in fire that destroyed Navy ship*, Associated Press & Fox5 San Diego (Feb. 25, 2022), https://fox5sandiego.com/news/local-news/sailor-facing-court-martial-in-fire-that-destroyed-navy-ship/.

22.    On July 28, 2021, just over a year later, the Navy charged Seaman Apprentice Ryan Mays with violations of the Uniform Code of Military Justice in a case that has attracted widespread attention across the United States and around the world.  *See, e.g.*, *Navy report blames crew for devastating fire on the Bonhomme Richard*, BBC (Oct. 19, 2021), https://www.bbc.com/news/world-us-canada-58975431; John Ismay, *Navy Charges Sailor With Arson in Fire That Destroyed Warship*, N.Y. Times (July 29, 2021), https://www.nytimes.com/2021/07/29/us/politics/bonhomme-richard-fire.html?smid=url-share.

23.    Mr. Mays is currently on trial for these charges at the San Diego Naval Base.  Trial commenced September 19, 2022, and is expected to end on September 29.

Gibson, Dunn & Crutcher LLP

105730174.10

8

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

24.     Mr. Mays has maintained his innocence and claimed the Navy is seeking to make him a "scapegoat," proceeding with his court-martial even though the Navy's preliminary hearing officer recommended against it.  Bill Feather, *Charges Upheld, Seaman Accused in USS Bonhomme Richard Fire to Face Court-Martial*, NBC7 San Diego & Associated Press (Feb. 25, 2022), https://www.nbcsandiego.com/news/local/military/charges-upheld-seaman-accused-in-bonhomme-richard-fire-to-face-court-martial/2836636/.

25.     Megan Rose, a Pulitzer Prize-winning reporter at ProPublica, has been reporting on Mr. Mays' court-martial, but her reporting has been hampered by a lack of access to the court records and public docket sheet in the case.  While she has nevertheless reported on this case and the origins of the fire using other records and interviews with relevant parties, *see* Megan Rose, *The Navy Accused Him of Arson. Its Own Investigation Showed Widespread Safety Failures*, ProPublica (Sept. 23, 2022), https://www.propublica.org/article/bonhomme-richard-fire-safety-lapses, her inability to access the court record has constrained her reporting.

26.     Upon information and belief, the court records at issue have been submitted and discussed extensively in open court.  They are not classified, under seal, or otherwise restricted.  They include, among other items, multiple pre-trial defense motions, written orders by the court, the preliminary hearing officer's report, and the prosecution's motion to exclude from evidence the Navy's report concluding that leaders within the Navy had failed to ensure the ship's safety and allowed it to become a fire hazard.  *See* Rose*, supra,* ¶ 25.

27.     On July 7, 2022, Ms. Rose requested via email all court files in the case from the Navy's Office of the Judge Advocate General ("OJAG").

28.     Between July 13 and August 13, 2022, OJAG repeatedly denied Ms. Rose's request, relying on shifting reasons.  First, OJAG personnel claimed Exemption 7(A) of the federal Freedom of Information Act ("FOIA") prevented the disclosure.

Gibson, Dunn & Crutcher LLP

105730174.10

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

That exemption authorizes agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

29.     In a phone call on August 3 and email on August 5, counsel for ProPublica explained that this exemption could not possibly apply here, since these records had all been submitted without seal and discussed in open court already. Therefore, their public release could not "interfere" with the proceedings. ProPublica's counsel also explained that FOIA exemptions are irrelevant because these are court records, subject to a separate and additional right of contemporaneous public access under both the First Amendment and common law.

30.     In the phone call on August 3, OJAG personnel could not identify any authority to support its claim that Exemption 7(A) applies to records already submitted with the court.  OJAG personnel then claimed it could not release the records due to its internal protocol adopted pursuant to Art. 140a of the Uniform Code of Military Justice.  OJAG personnel stated that, due to the Privacy Act, 5 U.S.C § 552a, the Navy interprets Art. 140a to only permit release of court records *if* the accused is convicted and then only after the record has been "certified" following trial.  OJAG personnel stated that even in cases ending in conviction, the record released to the public would only include certain limited portions and exclude any attachments to motions.

31.     On August 8, ProPublica's counsel advised OJAG via email that, while ProPublica did not believe it necessary, Mr. Mays had agreed to sign a Privacy Act waiver to facilitate the release of the records as soon as possible, and prior to an upcoming hearing in the *Mays* case on August 17.  Counsel for Mr. Mays also directly requested that OJAG release the records and advised that Mr. Mays waived any privacy interests.

105730174.10

Gibson, Dunn & Crutcher LLP

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

32.     On August 13, OJAG personnel advised ProPublica that it still would not release the records.  It no longer asserted the Privacy Act as the basis for its decision. Instead, OJAG simply stated that it was required to withhold the records due to its interpretation of Art. 140a and the Navy's instructions interpreting that article.  It also reasserted its claim that Exemption 7(A) applied, but again failed to cite any authority demonstrating that this exemption could apply to records already submitted and discussed in open court.  OJAG ignored ProPublica's request for the records under the First Amendment and common law, claiming that because the records had been requested under FOIA, ProPublica was "bound" by its exemptions.  Yet, in the same email, OJAG inexplicably stated that "ProPublica did not file a FOIA request for the documents[.]"  Finally, OJAG personnel stated that she would be "on reserve duty" until September 14 and would not be checking email until she returned.

33.     On August 13, counsel for ProPublica responded to OJAG identifying the flaws in its analysis and explaining again that the requested records are subject to disclosure under the First Amendment, common law, and FOIA.  OJAG never responded.

34.     Despite OJAG's claimed prohibition on releasing any court records unless the accused is convicted and then only after the record has been "certified" after trial, the government *has disclosed* two documents that happen to support the prosecution's case in *United States v. Mays*—the charge sheet and search warrant, including the supporting affidavit.[4]

35.     On August 15, 2022, ProPublica submitted a letter to Commander Butler, the military judge assigned to Mays' case, requesting immediate release of the court records and contemporaneous access to future court filings or, alternatively,

---

[4]     A U.S. district court granted a motion by federal prosecutors to unseal search warrant materials on August 2, 2021.  *In the Matter of the Search of Google LLC*, No. 20-mj-3733, ECF No. 4 (S.D. Cal. Aug. 3, 2021); *see also Newly released search warrant gives new info into fire on Bonhomme Richard and sailor accused of starting it*, CBS8 (Aug. 4, 2021), https://www.cbs8.com/article/news/national/military-news/bonhomme-richard-search-warrant/509-cfab508e-7fd7-4952-99ed-5d705b88715.

Gibson, Dunn & Crutcher LLP

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

clarification that Mr. Mays could exercise his First and Sixth Amendment rights to disclose the records himself.

36.     On August 16, 2022, Mr. Mays filed his own motion requesting release of the court records invoking his Sixth Amendment right to a fair and public trial.

37.     On August 17, 2022, Commander Butler presided over a preliminary hearing, in which the government objected to ProPublica's request, claiming that ProPublica did not have standing to seek release of the records.  ProPublica requested an opportunity to address this argument, explaining that it is well-settled in civilian courts that members of the press and public do have standing to intervene in court cases for the purpose of asserting the public's right of access to the proceedings and court records.  Commander Butler denied ProPublica's request to address standing. After a brief recess, he stated that he would not consider ProPublica's letter at all but would permit ProPublica to submit a formal motion restating its request for access.

38.     On August 22, 2022, ProPublica submitted a formal motion, again seeking contemporaneous access to the court records based on the First Amendment and common law.  *See* Motion for Appropriate Relief at 2, https://www.documentcloud.org/documents/22276015-202208022_propublica_motion_final?responsive=1&title=1.  ProPublica also requested access to a public docket to enable the public to meaningfully follow the proceedings.

39.     On August 24, 2022, the prosecution filed an opposition to ProPublica's motion.  It did not contest that ProPublica had standing or that the First Amendment and common law rights of access applied to the court records but claimed it was too difficult to release records while a court-martial is happening.  The opposition stated that military courts do not have a clerk to coordinate records, and military courts have to operate in a fluid environment, such as a war zone.  But the government conceded that the military had published court-martial records during ongoing proceedings in

Gibson, Dunn &
Crutcher LLP

105730174.10

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

other high-profile cases, including *United States v. Bergdahl*, and that it could do so here. *See* Govt. Response to Defense & ProPublica Motions for Release of Documents, https://www.documentcloud.org/documents/22276337-20220824_govt_response_to_pp_defense_motion?responsive=1&title=1. And, of course, this court-martial is taking place on the San Diego Naval Base, not in a war zone.

40.    In an order issued on August 30, 2022, Commander Butler recognized that ProPublica had standing to seek access to the court records but denied its motion along with Mr. Mays' motion, finding that the court lacked authority to grant the requested relief because Art. 140a "controls this process," and it "does not authorize this Court to release court filings or to order the Government to do so." See Order at 3, https://bit.ly/3QySGc3. The military judge denied access to a public docket for the same reason. *Id.* Commander Butler similarly denied a request "to issue clarifying guidance to the Accused about his ability to release the documents." *Id.* at 4. The court suggested that the "proper avenue to pursue the release of these records" may be in an Article III court. *Id.* at 2.

41.    Commander Butler's August 30 decision would be withheld from the public, along with the rest of the court record, except that ProPublica, as a litigant, was provided with a copy of the ruling and published it as part of a story reporting on the Navy's continued denial of access to these records. *See* Megan Rose, *The Navy is withholding court records in a high-profile ship fire case*, ProPublica (Sept. 8, 2022), https://www.propublica.org/article/navy-bonhomme-fire-records.

42.    On September 1, ProPublica again reengaged with OJAG. ProPublica spoke with Captain Chad Temple, Director of the Navy's Criminal Law Division (Code 20) and asked that he publish the court records in a virtual reading room, as the government conceded it has done in other high-profile courts-martial. Mr. Temple stated that he would not do so and cited Art. 140a.

105730174.10

Gibson, Dunn &
Crutcher LLP

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

43. On September 13, ProPublica sent a letter to Department of Defense General Counsel Caroline D. Krass requesting that she issue corrected guidance as soon as possible that makes clear that Art. 140a, along with the First Amendment and common law, require contemporaneous access to court-martial records as well as a public docket, ensuring immediate release of the court records in the *Mays* case. ProPublica was joined by the Reporters Committee for Freedom of the Press and 38 press organizations, including The Associated Press, Gannett Co., Inc, Hearst Corporation, National Public Radio, Inc., The New York Times Company, and The Washington Post, among others. *ProPublica and Other News Orgs Urge Defense Dept. to Ensure Public Access to Military Court Records*, ProPublica (Sept. 14, 2022), https://bit.ly/3DwubJt.

44. On September 19, the National Institute of Military Justice ("NIMJ") wrote to Ms. Krass as well, endorsing ProPublica's September 13 letter. The NIMJ explained that the "law already provides for the public's right to attend court-martial proceedings and access [to] court filings and transcripts." Letter at 1. NIMJ's letter added that "UCMJ Articles 36, 140a, and by implication, 146, each call for the development of military practices and procedures that are consistent with American civilian courts" and that, "[i]nstead of such symmetry, it appears that military rulemaking has become increasingly divorced from civilian practice." Letter at 2. The letter concluded that the military's implementation of transparency initiatives like Art. 140a "in ways that are contrary to the intent behind them . . . is contributing to a burgeoning military justice legitimacy crisis." *Id.*

45. Ms. Krass did not acknowledge ProPublica's or NIMJ's letters until ProPublica contacted Ms. Krass's office on September 23, 2022, to provide notice of this lawsuit and motion for a temporary restraining order and preliminary injunction. The same day, Brent C. Harvey, Attorney-Manager in Ms. Krass's office, responded that it "appears" the media coalition's September 13 letter "was overlooked and not

sent on to Ms. Krass" but that he would do so now.  ProPublica requested that Ms. Krass respond by the end of the day.  She did not.  On September 27, 2022, Ms. Krass's office contacted ProPublica's counsel via email and stated that she "is reviewing the matter, and carefully considering [ProPublica's] comments," but declined to provide any substantive response to the letter.

46.     ProPublica has no other avenue to vindicate its First Amendment and common law rights of contemporaneous access to the court records in the *Mays* case other than through this Court.  The military appellate courts are courts of limited jurisdiction,[5] and the military's highest appellate court has specifically held that it lacks jurisdiction to consider writ petitions from news organizations seeking to compel the trial court to grant public access to court-martial records or proceedings.  *Ctr. for Const. Rts. v. United States*, 72 M.J. 126, 129–30 (C.A.A.F. 2013).

47.     FOIA is subject to lengthy delays and numerous exemptions and is thus not an adequate substitute for the First Amendment or common law rights of contemporaneous access to court proceedings and records, as set forth below.  By way of example, it took the Navy five months to resolve each of ProPublica's two most recent FOIA appeals in other matters, and even after these lengthy delays, it took the Navy almost another two months to release additional, heavily redacted records due to those decisions.

**Congress enacted Art. 140a to ensure timely public access to military court records and docket information**

48.     Contrary to the Navy's position, Congress adopted Art. 140a in 2016 to *promote* transparency in the military court system by ensuring public access to court-

---

[5]     Art. 66–67, UCMJ, 10 U.S.C. §§ 866(b) (intermediate appellate courts' jurisdiction limited to (1) review of appeals by accused, (2) cases referred by Judge Advocate General, and (3) automatic appeals in cases involving certain sentences, such as confinement for 2 years or more), 867 (describing limited jurisdiction of highest military appellate court).

Gibson, Dunn & Crutcher LLP

15

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

martial filings, records, and docket information, consistent with access in civilian courts.  *See* 10 U.S.C. § 940a(a)(4).

49.    Congress passed the law following years of public outcry concerning reports of widespread sex crimes in the military and calls from members of Congress and the public for greater transparency.[6]  Among other things, the law aimed to shed light on how sexual assault crimes are handled by addressing the "lack of uniform, offense-specific sentencing data from military courts, which makes meaningful comparison and analysis of military and civilian courts 'difficult, if not impossible.'" David A. Schlueter, *Reforming Military Justice: An Analysis of the Military Justice Act of 2016*, 49 St. Mary's L.J. 1, 113 (2017).

50.    Article 140a requires the Secretary of Defense to "prescribe uniform standards and criteria . . . using, insofar as practicable, the best practices of Federal and State courts" to facilitate "public access to docket information, filings, and records, taking into consideration restrictions appropriate to judicial proceedings and military records."  10 U.S.C. § 940a(a)(4).  The standards and criteria must facilitate such public access "at all stages of the military justice system . . . including pretrial, trial, post-trial, and appellate processes."  *Id.*

51.    According to a conference report by then-House Armed Services Committee Chairman Mac Thornberry (R-Tex.), Art. 140 aimed "to provide appropriate public access to military justice information at all stages of court-martial proceedings.  At a minimum, the system developed for implementation should permit timely and appropriate access to filings, objections, instructions, and judicial rulings at the trial and appellate level."  162 Cong. Rec. H6376-03, H6884 (daily ed. Nov. 30,

---

[6]    *See, e.g.*, Emily Crockett, *The war in Congress over rape in the military, explained*, Vox (June 8, 2016), https://www.vox.com/2016/6/8/11874908/mjia-military-sexual-assault-gillibrand-mccaskill; Donal Brown, *Sex Crime Coverup: Senators Attack Lack Of Transparency In Military Justice System*, First Amendment Coalition (Dec. 10, 2015), https://firstamendmentcoalition.org/2015/12/sex-crime-coverup-senators-attack-lack-of-transparency-in-military-justice-system/; Darren Samuelsohn, *Military still secretive on sex crimes*, POLITICO (Sept. 25, 2013), https://www.politico.com/story/2013/09/military-sexual-assault-transparency-097314.

Gibson, Dunn & Crutcher LLP

2016); *see also* Report of the Military Justice Review Grp. – Part I: UCMJ Recs. at 1014–15, https://jsc.defense.gov/Portals/99/MJRG%20Part%201.pdf ("Report") (proposing Art. 140a and using same language to describe its purpose).

52. According to the Military Justice Review Group, obtaining access to court-martial records through the FOIA is "time-consuming" and insufficient. Report at 1011. This group proposed the new article to "enhance efficiency and oversight" as well as "increase transparency in the system and foster public access to releasable information." *Id.* at 139. The new article aimed to provide "members of the public access to all unsealed court-martial documents" as well as court-martial dockets "in a manner similar to that available in the federal civilian courts." *Id.* at 28, 36. The report recommended using "the experience of federal and state systems" as a guide. *Id.* at 1012.

53. Congress generally intends "that, to the extent 'practicable,' trial by court-martial should resemble a criminal trial in a federal district court." *United States v. Valigura*, 54 M.J. 187, 191 (C.A.A.F. 2000).

### A 2018 memorandum and the Navy's 2020 instructions misinterpret Art. 140a and the Privacy Act

54. In 2018, former Department of Defense General Counsel Paul C. Ney, Jr. issued a memorandum advising the Secretaries of the Military Departments on implementation of Art. 140a. It stated that if he determined "the law is changed" to exempt the release of military court records and docket information from the Privacy Act, the records would be published online "as soon as practicable." Ney Memo. for Secretaries of the Military Departments at 2, 5 (Dec. 17, 2018) (Enclosure 1 to JAG Instr. 5813.2), https://www.jag.navy.mil/library/instructions/JAGINST_5813.2.pdf ("Ney Memo"). But if he concluded that the Privacy Act did apply, these records and information would be published "as soon as practicable after the certification of the record of trial[.]" *Id.* at 6.

105730174.10

17

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

Gibson, Dunn &
Crutcher LLP

55.     Two years later, OJAG issued instructions pursuant to the Ney Memo, implementing Art. 140a.  JAG Instr. 5813.2, https://www.jag.navy.mil/library/instructions/JAGINST_5813.2.pdf.  These instructions assume the Privacy Act applies in all courts-martial, without any analysis, and prohibit the release of any court records unless the accused is convicted and then only after the case has ended and within a 45-day period following "certification" of the record.  *Id.* at 2–3.  Upon information and belief, in practice, OJAG actually withholds access to court records until all appeals have been exhausted.

56.     In the event of a full acquittal, the instructions state, no records shall be published.  *Id.* at 3.  Even in those cases where the accused is convicted, numerous court records are never made available to the public.  These include attachments and "supporting evidence" submitted in connection with a filing, any trial exhibits, transcripts of "any proceedings," the preliminary hearing's officers report, "[p]re-trial matters" (including, among other things, witness lists, requests for instructions, and proposed voir dire), plea agreements, and even several types of court orders, such as protective orders, sealing orders, and contempt orders.  *Id.* at Encl. 3 at 1–3.

57.     The Privacy Act restricts government agencies from releasing certain personally identifiable information without prior written consent, with numerous exceptions, including for disclosures required by FOIA.  *See* 5 U.S.C. § 552a.  The Act was "not designed to interfere with access to information by the courts."  120 Cong. Rec. 36,967 (1974), reprinted in Source Book at 958–59, https://www.justice.gov/opcl/PAOverview_SourceBook/download.

58.     The Privacy Act must be read in conjunction with Art. 140a to permit timely public access to court-martial records and docket information at all stages of the proceedings.  The Act does not justify permanently depriving the public of entire court-martial records (in cases ending in acquittal) or large swaths of those records (in cases ending in conviction) and delaying the release of these records until they are no

Gibson, Dunn & Crutcher LLP

105730174.10

longer newsworthy. *See ABC, Inc. v. Stewart*, 360 F.3d 90, 99 (2d Cir. 2004) ("The ability to see and to hear a proceeding as i[t] unfolds is a vital component of the First Amendment right of access. . . .").

59.    Upon information and belief, the government routinely publishes the charge sheet and sometimes also search warrant materials in connection with court-martial proceedings despite the Privacy Act.

60.    Further, the Army has posted court records in virtual reading rooms during other high-profile court-martial proceedings. *See, e.g.*, *Ctr. For Const. Rts. v. Lind*, 954 F. Supp. 2d 389, 403 (D. Md. 2013) (noting that during court-martial of Bradley (now Chelsea) Manning, "the Army released to the public, on the internet, in readily downloadable form, the vast majority of the documents that had been filed"); *United States v. Bergdahl*, Hearing Tr. 112–13 (Attachment A to Govt. Response to Defense & ProPublica Motions for Release of Documents, https://bit.ly/3RTMfkY) (order by military judge requiring government to publish online, on an ongoing basis, unclassified court documents within 24-48 hours of filing).

61.    In any event, the Privacy Act does not apply in this case because Mr. Mays agreed to waive any Privacy Act interests he might have to prevent disclosure of these records.

62.    Art. 140a requires the Armed Services to facilitate "public access to docket information." § 940a(a)(4). The Navy JAG Corps purports to comply with this requirement by providing what it calls a "docket" for court-martial cases, but it only provides limited general information about these cases, such as the last name and first initial of the accused, the charges, hearing location, and procedural stage of the case. *See* https://jag.navylive.dodlive.mil/Military-Justice/Docket/. This so-called "docket" omits information necessary to follow the case, such as the motions, orders, or other documents filed in the case and when upcoming hearings and trial will occur.

Gibson, Dunn &
Crutcher LLP

105730174.10

**The public and press have a contemporaneous right of access to military court proceedings and records under the First Amendment and common law**

63.     The public has a qualified First Amendment and a common law right to attend criminal trials and pre-trial proceedings and to access related court filings, including, among others, pre-trial motions and judicial orders.[7]  These are rights of contemporaneous public access.  Such timely access is necessary to ensure the public has a meaningful opportunity to understand the proceedings as they occur and to oversee and scrutinize the criminal justice system when the information is current and newsworthy.

64.     The public and press also have a First Amendment and common law right to inspect public docket sheets, which provide the public with notice of case developments, the motions and other documents that have been filed, any orders that have been issued, and when judicial proceedings are scheduled to occur.

65.     These rights apply with equal force to court-martial proceedings and related records, including the court records submitted in the *Mays* case.[8]

66.     The First Amendment presumption of access may be overcome only by findings that:  (1) closure is necessary to further a compelling governmental interest, (2) the closure is narrowly tailored to serve that interest, and (3) no less restrictive means are available to adequately protect that interest.  *See Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 13–14 (1986) ("*Press-Enterprise II*").

67.     The common law right recognizes "a strong presumption in favor of access" and requires a balancing of the "competing interests." *United States v. Bus. of*

---

[7]     *See, e.g.*, *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 13 (1986) ("*Press-Enterprise II*") (recognizing First Amendment right of access to pre-trial criminal hearing and associated transcript); *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1145 (9th Cir. 1983) (recognizing First Amendment right of access to "pretrial documents in general" in criminal cases).

[8]     *See, e.g.*, *United States v. Scott*, 48 M.J. 663, 666 (A.C.C.A. 1998) (finding that military judge abused discretion by sealing entire stipulation of fact without identifying an "overriding interest" necessitating sealing or making any findings as required by First Amendment right of access).

Gibson, Dunn & Crutcher LLP

20

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

*Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194–95 (9th Cir. 2011). It can only be overcome by "compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure." *Id.*

68.    Because the First Amendment right of access applies here, the more stringent constitutional standard that governs the withholding of court records must be satisfied. Any compelling interest in favor of keeping such records secret must be supported by findings specific enough that a reviewing court can determine whether sealing is permissible. *Press-Enterprise II*, 478 U.S. at 9–10.

69.    The Ney Memo and the 2020 JAG instructions violate these First Amendment and common law rights of access because they prohibit the public and news organizations, such as ProPublica, from gaining access to court martial records and dockets in a timely manner. Commander Butler further violated these First Amendment and common law rights of access by denying ProPublica's motion for access to those records in *Mays*. Defendants continue to violate these rights as they have not articulated any compelling government interest that necessitates the blanket withholding of these records, much less made any showing of narrow tailoring or that this is the least restrictive means to address that alleged interest.

70.    In addition, ProPublica has a First Amendment right to "receive information and ideas" from willing speakers, including Mr. Mays, who would like to exercise his First and Sixth Amendment rights to disclose the court records filed in his case to ProPublica. *See, e.g.*, *Kleindienst v. Mandel*, 408 U.S. 753, 762–63 (1972). But he has been effectively prevented from doing so by OJAG and the military judge's position restricting the release of court records. Defendants have violated ProPublica's rights by preventing Mr. Mays from sharing these records.

Gibson, Dunn &
Crutcher LLP

105730174.10

21

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

## CAUSES OF ACTION

### Count I

**(All Defendants)**

**Declaratory Judgment under 28 U.S.C. § 2201**

**(First Amendment and Common Law)**

71.    ProPublica repeats and re-alleges the foregoing paragraphs as if fully restated and set forth herein.

72.    Defendants, as government actors and public officials, by denying ProPublica contemporaneous access to docket information and the court record in *Mays*—including, among other things, judicial orders, motions filed by the defense and prosecution, and the preliminary hearing officer's report—have violated ProPublica's First Amendment and common law rights of access to the proceedings and records.

73.    ProPublica is informed and believes that Defendants routinely deprive the public of docket information and virtually the entire court-martial record (aside from the charge sheet and, potentially, search warrant materials that support the prosecution's position) and that they do so as a matter of policy and practice.  Further, Defendants never disclose the court records when an accused is acquitted and they only permit the release of certain limited portions of the record when the defendant is convicted and then only after a lengthy delay, while omitting critical portions of the record—such as any attachments, supporting evidence, transcripts, and even certain court orders—without any justification.  Such denials of court access are not supported by any case-specific, on-the-record findings demonstrating why particular records must be withheld from the public.

74.    Defendants have violated the public's rights of access to court-martial proceedings and related records guaranteed by the First Amendment and common law, which Art. 140a was intended to vindicate.

75.    An actual controversy therefore exists within this Court's jurisdiction, and the Court should declare ProPublica's rights as set forth herein.  Even if the *Mays* trial

Gibson, Dunn & Crutcher LLP

105730174.10

22

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

concludes prior to a ruling by this Court, such declaratory relief is still needed to ensure proper release of these records, given Defendants' restrictive policy of withholding at least significant portions of the records permanently, as set forth above.

76.     In addition, the Court should declare that Mr. Mays may exercise his First Amendment and Sixth Amendment rights to share the court records submitted in the *Mays* case with ProPublica and other members of the press and public.

## Count II

### (All Defendants)

### Preliminary and Permanent Injunction

### (First Amendment and Common Law)

77.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully restated and set forth herein.

78.     Continued withholding of the court records has caused and will continue to cause irreparable harm to the public and ProPublica.  Keeping these court records and docket information secret impairs ProPublica's ability to gather and report the news and infringes its First Amendment and common law rights of access to such court-martial proceedings.  This, in turn, deprives the public of its First Amendment and common law rights of access, preventing it from being able to meaningfully understand and assess the *Mays* proceedings, the orders the judge has issued, the government's controversial decision to prosecute Mr. Mays, and any verdict issued in the case.

79.     There is a significant public interest in contemporaneous access to court-martial proceedings and related court records, including the *Mays* trial.  Such proceedings adjudicate matters of extraordinary public interest concerning charges of criminal conduct by members of the Armed Forces.  The public has a powerful interest in ensuring that such individuals are not wrongfully deprived of their liberty and that justice is served through this process.

Gibson, Dunn &
Crutcher LLP

105730174.10

23

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

80.     Defendants, who are government actors and public officials, have offered no valid justification for depriving the press and the public of access to these public court records.  The balance of interests strongly favors transparency.

81.     Even if the *Mays* trial concludes prior to a ruling by this Court, ProPublica's request for injunctive relief would not be moot.  Defendants have a policy of denying public access to docket information and court records in all court-martial cases, without any valid basis for doing so, based on the 2018 memorandum by the Department of Defense General Counsel, now Ms. Krass, and the 2020 instructions from OJAG, now led by Vice Admiral Crandall Jr.  Thus, the denial of access will undoubtedly continue.

## Count III
### (All Defendants)
### Writ of Mandamus
### (First Amendment and Common Law)

82.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully restated and set forth herein.

83.     Defendants, by denying ProPublica, as a member of the public and the press, access to court records and docket information in the court-martial proceedings against Mr. Mays, have violated ProPublica's First Amendment and common law rights of access.  In doing so, Defendants as government actors and public officials have failed to perform their clear duties to uphold the constitutional rights of the public and press.

84.     Accordingly, Defendants are subject to a writ of mandamus issued by this Court pursuant to the authority granted in 28 U.S.C. § 1361.

85.     ProPublica's right of access to the *Mays* court-martial proceeding, guaranteed under the First Amendment and common law, has been and continues to be irreparably harmed by Defendants' decision to withhold the court records and docket

Gibson, Dunn &
Crutcher LLP

105730174.10

24

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

information instead of releasing those records in a timely manner as the case and trial are ongoing. As a result, this Court should issue a writ of mandamus directing Defendants to cause the court records and docket information in this case to be immediately released and to continue to publicly release such records and information as they are filed throughout the rest of the *Mays* proceedings, consistent with the First Amendment and common law.

## Count IV

### (Defendant Lloyd J. Austin III)

### Writ of Mandamus

### (10 U.S.C. § 940a (Art. 140a))

86.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully restated and set forth herein.

87.     Secretary of Defense Lloyd J. Austin III, by failing to prescribe uniform standards and criteria for conduct as to the "facilitation of public access to docket information, filings, and records," has failed to perform a duty owed to ProPublica and the public under Art. 140a. 10 U.S.C. § 940a. Accordingly, Secretary Austin is subject to a writ of mandamus issued by this Court pursuant to the authority granted in 28 U.S.C. § 1361.

88.     ProPublica's right of access to the *Mays* court-martial proceeding, which was supposed to be furthered by the Secretary's implementation of uniform standards under Art. 140a, has been and continues to be irreparably harmed by his failure to implement any such uniform standards consistent with this article. As a result, this Court should issue a writ of mandamus directing Secretary Austin to prescribe the uniform standards and criteria for conduct concerning public access to docket information, filings, and records, which are mandated by the Article.

## REQUEST FOR RELIEF

WHEREFORE, ProPublica respectfully requests that this Court:

Gibson, Dunn & Crutcher LLP

105730174.10

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

(1)  issue a declaratory judgment that (i) the First Amendment and common law presumptions of contemporaneous public access to court records and docket information apply to court-martial proceedings, including the *Mays* case, and that the Defendants' denial of timely access to such records and information violates these rights, and (ii) that Mr. Mays may exercise his First and Sixth Amendment rights to release these court records to ProPublica and other members of the press and public;

(2)  issue a preliminary injunction (i) enjoining Defendants from continuing to withhold court records and docket information from the public in court-martial proceedings, including in the *Mays* case, in violation of the public's First Amendment and common law rights of contemporaneous access, and (ii) requiring Defendants to immediately release the court records already submitted in the *Mays* case, to make any future court records available to the public contemporaneously with their filing, and to release docket information that is continually updated to enable the public to meaningfully follow the proceedings, consistent with the First Amendment and common law;

(3)  issue a permanent injunction to the same effect;

(4) issue such writs of mandamus as may be necessary to ensure that (i) Defendants comply with the declarations and rulings of this Court with respect to ProPublica's First Amendment and common law rights of access to documents and other materials generated during the *Mays* court-martial trial and related proceedings, and (ii) the Secretary of Defense issues the required uniform standards and criteria of conduct consistent with the directives of Art. 140a;

(5)  award ProPublica reasonable attorney's fees and costs incurred in this action under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A); and

(6)  grant such other relief as the Court may deem just and proper.

Gibson, Dunn &
Crutcher LLP

105730174.10

26

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.

DATED: September 27, 2022   Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Theodore J. Boutrous, Jr.*
   Theodore J. Boutrous, Jr.
   Gibson, Dunn & Crutcher LLP

*Attorney for ProPublica*

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system.  I further certify that on today's date I caused the following parties to be served via express mail and certified mail and/or personal delivery:

**COMMANDER DEREK D. BUTLER, JAGC, USN**
Military Judge, U.S. Navy
U.S. Navy-Marine Corps Trial Judiciary
1250 10th Street SE, Suite 1300
Washington Navy Yard, D.C. 20374-5140
derek.butler2.mil@us.navy.mil

**VICE ADMIRAL DARSE E. CRANDALL, JAGC, USN**
Judge Advocate General of the Navy
1322 Patterson Ave., Suite 3000
Washington Navy Yard, D.C. 20374-5066
sylvaine.w.wong.mil@us.navy.mil

**CARLOS DEL TORO**
Secretary of the Navy
United States Navy
1000 Navy Pentagon
Washington, D.C. 20350-1200

**CAROLINE D. KRASS**
General Counsel
Department of Defense
1600 Defense Pentagon
Washington, D.C. 20301-16000
denise.v.shellman.civ@mail.mil
robert.e.easton2.civ@mail.mil

**MERRICK B. GARLAND**
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**RANDY GROSSMAN**
Attn: Civil Process Clerk
U.S. Attorney's Office Southern District of California
Federal Office Building
880 Front Street, Room 6293, 6th Floor
San Diego, California 92101-8893

Gibson, Dunn & Crutcher LLP

105730174.10

28

1
2     Date: September 27, 2022                    /s *Theodore J. Boutrous, Jr.*
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

105730174.10

29

PROPUBLICA, INC. V. COMMANDER DEREK BUTLER, JAGC, USN, ET AL.