ANDREW R. HADEN
First Assistant United States Attorney
KATHERINE L. PARKER, SBN 222629
Chief, Civil Division
SAMUEL W. BETTWY, SBN 94918
Assistant U.S. Attorney
JULIET M. KEENE, NM SBN 126365
Assistant U.S. Attorney
MARY CILE GLOVER-ROGERS, SBN 321254
Assistant U.S. Attorney
ERIN M. DIMBLEBY, SBN 323359
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7634/6987/7125/7643 / 7751 (fax)
Katherine.Parker@usdoj.gov
Samuel.Bettwy@usdoj.gov
Juliet.Keene@usdoj.gov
Mary.Glover-Rogers@usdoj.gov
Erin.Dimbleby@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRO PUBLICA, INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>REAR ADMIRAL LIA REYNOLDS; TERENCE G. EMMERT; CHARLES L. YOUNG III; AND PETE HEGSETH,<br><br>       Defendants. | Case No. 22-cv-1455-BTM-KSC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 21, 2025<br>Time: 11:00 a.m.<br>Judge: Hon. Barry Ted Moskowitz<br><br>PER CHAMBERS, NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

A.    <u>NON-JUSTICIABILITY</u>

This case presents a nonjusticiable political question under *Baker v. Carr*, 369 U.S. 186 (1962), which sets forth six considerations when deciding whether a claim is justiciable, namely:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id*. at 369 U.S. at 217.

This case is nonjusticiable due to multiple considerations.

*Respect due coordinate branches of government*

Most notably, Plaintiff wholly fails to address the fact that this case concerns an inter-branch (Congress-Executive) process where Congress, in assessing the operation of the Uniform Code of Military Justice (UCMJ), evaluated public access to court-martial records and assigned implementation of policies and procedures to the Department of Defense (DoD) with close congressional oversight. Tellingly, Plaintiff does not cite a case in which a court has ruled that the political question doctrine does not apply to an inter-branch statutory scheme and decision-making process. *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) (arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived) (citing *United States v. Williamson*, 439 F.3d 1125, 1138 (9th Cir. 2006)).

///
///
///

Plaintiff states only that the report of the Military Justice Review Panel (MJRP) "does not require DoD to do anything." Pl. Resp. at 11, ECF No. 112.[1] However, the MJRP reports to Congress. This is evidenced by the MJRP's report and recommendations to Congress for amendments to the statutory requirements of Article 140a. *See, e.g.*, MJRP Report, Recommendation 5 at 3 ("By January 1, 2026, Congress statutorily require DoD to provide public access to pretrial, trial, and appellate court-martial records at time of filing"). The MJRP periodically assesses the UCMJ, to include Article 140a, and provides a report setting forth its findings and recommendations for Congress to consider in the decision-making process. *See* 10 U.S.C. §§ 946(f)(3)-(5) ("the Panel shall submit a report to the Committees on Armed Services of the Senate and the House of Representatives."). The MJRP report is not intended to be, as Plaintiff argues, a blueprint for this Court to supersede those ongoing efforts by ordering sweeping changes.

Plaintiff cites two inapposite district court decisions in support of its argument that the political question doctrine does not apply in media access cases. Pl. Resp. at 11-12. Those decisions concerned judicial review of a Navy regulation and a guideline; neither case concerned an inter-branch decision-making statutory scheme. *See Nation Magazine v. U.S. Dep't of Def.*, 762 F. Supp. 1558, 1568 (S.D.N.Y. 1991) ("the mere fact that the *regulations* were promulgated by DOD to deal with press restrictions during military operations does not render the controversy non-justiciable") (emphasis added). Importantly, the district court in *Nation Magazine* warned: "Civilian courts should 'hesitate long before entertaining a suit which asks the court to tamper with the . . . necessarily unique *structure* of the Military Establishment.'" *Id*. at 1566-67 (emphasis added) (quoting *Chappell v. Wallace*, 462 U.S. 296, 300 (1983)). The present case, however, concerns the framework that the Navy uses to facilitate public access to court-

---

[1] The Military Justice Review Panel, *2024 Comprehensive Review and Assessment of the Uniform Code of Military Justice* (Dec. 2024) at page 1, https://mjrp.osd.mil/sites/default/files/MJRP%202024%20Comprehensive%20Review%20and%20Assessment%20of%20the%20UCMJ.pdf (MJRP Report).

martial docket information, filings, and records, which is governed by a statutory scheme and congressional oversight.

Plaintiff also cites the 2003 *Flynt* case in which the district court specifically noted that the political question doctrine should be applied to matters involving the "*coordinate* branches of government." *Flynt v. LFP, Inc*., 245 F. Supp. 2d 94, 105 (D.D.C. 2003) (emphasis added), *aff'd on other grounds sub nom.*, 355 F.3d 697 (D.C. Cir. 2004). The *Flynt* case is entirely distinguishable, because it involved only an agency guideline, not an inter-branch, decision-making statutory scheme.

According to DoD's April 2024 Feasibility Report to Congress, a PACER-like system would be extremely costly. ECF No. 99-1 (Def. MSJ Exhibits) at 94 ("A rough estimate of the costs to create a publicly accessible digital database of records of trial and non-judicial punishment proceedings is: $60 million in contract funding, $15 million in non-labor costs, and 53 years of full-time equivalent staffing."). Plaintiff responds only that the DoD's estimate is not specific enough. Pl. Resp. at 23-24. Plaintiff does not dispute, however, that establishing a PACER-like system would be costly, and Plaintiff's expert did not review or comment on the 2024 Feasibility Report. ECF No. 89-1 at 555-56.

Establishing such a system will potentially require Congressional funding, which is beyond the purview of the courts. *See California v. Trump*, 379 F. Supp. 3d 928, 941 (N.D. Cal. 2019), *aff'd*, 963 F.3d 926 (9th Cir. 2020) ("'[a]n amount available under law may be withdrawn from one appropriation account and credited to another or to a working fund only when authorized by law.'") (quoting 31 U.S.C. § 1532); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018) ("The United States Constitution exclusively grants the power of the purse to Congress . . .") (citing U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause)).

///

///

*Constitutional commitment of the issue to a coordinate political department*

Plaintiff acknowledges Defendants' authority to provide for and maintain a Navy. Pl. Resp. at 3 (citing Const. art. I, § 8, cl. 13.) Plaintiff attempts to deflect, however, by arguing that the military justice system is exclusively judicial in nature. Pl. Resp. at 1, 3-4. For support, Plaintiff relies on *Ortiz v. United States*, 585 U.S. 427 (2018), but *Ortiz* does not support Plaintiff's overbroad proposition that all aspects of the military justice system are exclusively judicial. The narrow, distinguishable question in *Ortiz* was whether an appellate military judge was disqualified from serving on a panel in a particular case, *see id*. at 431, and the Supreme Court considered only its own statutory jurisdiction to review a military appellate decision. *See id*. at 435 ("We begin with a question of our own jurisdiction to review the [Court of Appeals for the Armed Forces'] decisions. Congress has explicitly authorized us to undertake such review in 28 U.S.C. §1259.").

The instant case does not concern review of judicial decisions; it concerns collaborative, inter-branch decision making about the structure of the Navy's case management system. Neither the Supreme Court nor the military appellate courts make decisions about the structure of the military justice system. Congress has kept those decisions with the political branches, where the requisite expertise rests. And Congress and the Executive Branch exercised their authority and applied their expertise to design a system that is feasible and "appropriate to judicial proceedings and military records." 10 U.S.C. § 940a(a)(4).

*National security: lack of manageable standards and a policy determination of a kind clearly for nonjudicial discretion*

This Court is not in a position to evaluate Defendants' national security concerns. Plaintiff argues that this Court can simply ignore such concerns because they are unsubstantiated, rare, and easily addressed. Pl. Resp. at 7, 21. Yet, the opening paragraph of the MJRP Report, which Plaintiff heavily relies on, states: "Any reforms to our military justice system must balance the unique requirements of the military and

-4-

emerging challenges of national security with the unchanging need to do justice." MJRP Report at 1. The MJRP specifically "recognizes both the profound impact of the many changes to military law adopted in recent years and the potential risk to national security of seeking to replicate the practices of civilian criminal justice in the Armed Forces." *Id*. Plaintiff selects what it likes from the MJRP Report (Pl. Resp. at 11, 20, 24-25), while ignoring national security concerns that underlie the entire Report.

Plaintiff's "expert"[2] Robert Crow mentions national security only once in his 73-paragraph report, and he cavalierly states that "classified material and truly sensitive national security information rarely are at issue." Pl. Resp. at 21; ECF No. 89-1 at 567. Mr. Crow fails to define "truly sensitive national security information," a term not used by the military, and appears to suggest that only a subset of classified national security information warrants the protections that the government requires for all such information. However, Captain Chad Temple, Defendant's non-retained expert witness and an active-duty military officer, explained that "there are [] categories of information that may not be classified but would be characterized as sensitive government information." Temple Dep. at 197:24-198:1. Instances involving this sensitive government information "come[] up regularly" and can be found in any type of case, including cases involving sexual assault or drug offenses. *Id.* at 198:2-16.

Moreover, the concern is not only about information that is "at issue" in an Article 32 preliminary hearing or court-martial proceeding. Nor is the concern only about "classified national security information and similarly sensitive information," although these are indisputably important. Pl. Resp. at 21. The national security concern is also about the availability of unclassified information to foreign intelligence analysts

---

[2] Defendants challenge Mr. Crow's designation as an "expert" in this case. Mr. Crow's insight into the military justice system is outdated as the majority of his experience predated the enactment of Article 140a. His recent service in the Navy as a Circuit Military Judge involved presiding over courts-martial and supervising military judges. Pl. Resp. at 26; ECF No. 89-1 at 573. Neither of those responsibilities provide the requisite professional experience to opine on the process of providing public access pursuant to Article 140a.

who can rapidly aggregate limitless amounts of information about personnel, munitions, ship movements, sensitive job assignments, and other military matters to assess our military strengths and vulnerabilities and predict military operations. ECF No. 99 (Def. MSJ) at 14, 38. This aggregation "could be detrimental to [military] operations in a variety of locations." Temple Dep. at 203:19-23.

Plaintiff and its expert do not address the concern about disclosing such unclassified information. Instead, Plaintiff responds that "Defendants cite no direct evidence to support this proposition." Pl. Resp. at 21. Defendants did, however, cite Supreme Court and D.C. Circuit decisions about the aggregation of information. Def. MSJ at 38 (citing *CIA v. Sims*, 471 U.S. 159, 178 (1985) ("Foreign intelligence services have both the capacity to gather and analyze any information that is in the public domain and the substantial expertise in deducing the identities of intelligence sources from seemingly unimportant details.") and *Halperin v. Cent. Intel. Agency*, 629 F.2d 144, 150 (D.C. Cir. 1980) ("We must take into account, however, that each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself.")). Captain Temple also discussed this concern several times in his deposition testimony. Temple Dep. 154:1-155:3, 198:2-16; 203:19-23.

In addition, DoD stated in its 2024 Feasibility Report: "[P]lacing court-martial records online without thorough vetting to remove personally identifiable information could, in the military context, have national security implications. For example, court-martial testimony may reveal the identity of special operations forces who engaged in sensitive activities against foreign adversaries." Def. MSJ Exhibits at 93. National security concerns are clearly of paramount concern to DoD (and the MJRP), both having expressed those concerns in their reports to Congress. Plaintiff does not substantively challenge the 2024 Feasibility Report. *See* ECF No. 89-1 at 555-56.

Plaintiff further asserts, incorrectly, that Defendants "fail to explain why the military justice system cannot address national security issues on a case-by-case basis

as they may arise," cavalierly suggesting that national security information can be "easily" addressed on the spot by trial counsel (prosecutor) and defense counsel in the midst of a trial, with redactions, sealing orders, and protective orders. Pl. Resp. at 21-22. Defendants did, however, highlight the referenced concerns: Captain Temple's testimony and the 2024 Feasibility Report address some of the burdens associated with protecting potentially classified information on a case-by-case basis. Def. MSJ at 41; ECF No. 99-1 at 93. Defendants explained that screening filings and records for classified, sensitive, and private information requires expertise and centralization to ensure uniform application and oversight. Def. MSJ at 41. Such redactions undergo multiple layers of review. Temple Dep. 152:23-154:12. The primary mission of the trial counsel and defense counsel does not include this type of work. Requiring them to acquire this expertise and single-handedly replace multiple levels of review would take much time away from their primary mission and create a potential chilling effect for victims. Temple Dep. 135:13-136:25.

As explained below in the context of the Privacy Act (*see* note 4 *infra* and accompanying text), studies show that case attorneys are not reliable guardians of information that should be redacted. Every military justice proceeding provides a portal to potentially sensitive and classified information, and it is not the province of the courts to determine who should be the appropriate guardians of that information. It is the province of Congress and the Executive Branch.

The danger to the United States posed by immediately providing access to all court-martial documents on the internet far outweighs any interest Plaintiff has in reporting on court-martial proceedings. Plaintiff's vague and disputed assertion that national security concerns are "rare" is irresponsible, implying that national security risks are tolerable. But it is not within this Court's province to determine whether those risks rarely arise, whether they are tolerable, and whether they can be easily addressed and minimized. How to manage the military justice system while minimizing national

security risks is the exclusive province of Congress and the Executive Branch, and they are actively engaged in that process.

Plaintiff and its expert also fail to address the numerous statutes designed to protect sensitive information on a case-by-case basis. *See* 10 U.S.C. §§ 128 (control and physical protection of special nuclear material: limitation on dissemination of unclassified information), 130 (certain technical data), 130b (personnel in overseas, sensitive, or routinely deployable units: nondisclosure of personally identifying information), 130c (certain sensitive information of foreign governments and international organizations), 130d (certain confidential information shared with State and local personnel), 130e (certain critical infrastructure security information), 424 (organizational and personnel information), 455 (maps, charts, and geomatics data).

Plaintiff does not address any of these statutes and the need to protect such information from public disclosure in the course of Article 32 and courts-martial proceedings. *See Weekly v. United States*, No. 122CV00341JLTSAB, 2023 WL 6796428, at *5 (E.D. Cal. Oct. 13, 2023) ("In this District, as well as in other courts in this circuit, a plaintiff's failure to respond to a defendant's argument set forth in a dispositive motion constitutes waiver of that argument.").

Plaintiff suggests that national security is not a concern at all because "the public could sit in open court and hear the same information that the government says the public should not be able to read." Pl. Resp. at 8. Defendants pointed out, however, that presenting information in court on a secure military installation is vastly different than making it publicly available on the internet, enabling foreign intelligence analysts to immediately gather and analyze it. Def. MSJ at 14, 38. Again, Plaintiff did not address this point, which constitutes a waiver. *See Weekly*, 2023 WL 6796428, at *5.

Plaintiff also dismisses as "sheer speculation" and "conclusory" Captain Temple's testimony that unit cohesion and therefore national security could be compromised by providing public access to information mid-trial. Pl. Resp. at 20. Plaintiff unwittingly reveals the problem with disclosing details, such as witness

statements, during emotionally charged cases, like one with allegations of sexual assault, which is the type of case that Plaintiff seems most interested in publicizing. Plaintiff calls such evidence "*facts*," Pl. Resp. at 20 (emphasis in original), but because an accused is presumed innocent, facts are not decided until the end of the trial. If an experienced lawyer can misidentify evidence presented at trial as fact, even more so might a lay person, and therein lies the problem. Courts-martial are adversarial proceedings, and percipient witness testimony may not always be reliable.

Lastly, according to Plaintiff, there is no evidence that publicity of a case causes divisiveness. But history is replete with examples of highly publicized civilian criminal trials causing or aggravating tension and division. By definition, divisiveness in a military unit compromises unit cohesion, and it is well-documented that unit cohesion is essential to military effectiveness. Captain Temple's testimony on national security implications of unit cohesion sufficiently reflects a broader military judgment on this matter, and Plaintiff points to no source countering this judgment. In any event, it is for the Executive Branch, working with Congress, to decide how to manage unit cohesion and other national security risks. It is not the province of this Court.[3]

A. <u>FIRST AMENDMENT AND COMMON LAW</u>

In response to Defendants' MSJ, Plaintiff concedes that there is no absolute First Amendment right to contemporaneous public access to the filings and records of all Article 32 preliminary hearings and courts-martial. Pl. Resp. at 13. The right, if it exists, is qualified by several factors. Plaintiff addresses some, but not all, threshold prongs and factors.

---

[3] Plaintiff incorrectly states that Defendants are asserting nonjusticiability on the ground that military justice is simply a "military matter." Pl. Resp. 7. On the contrary, Defendants made clear that "[t]his case involves inter-branch decision-making, not a specific internal military decision" and that the Ninth Circuit has "limited application of [the *Mindes*] test to internal military decisions." Def. MSJ at 30 n.16. Furthermore, Plaintiff has taken Defendants' quotation out of context: Defendants' argument in full is that "Plaintiff's claims involve military matters *that have national security implications*." *Id*. at 26 (emphasis added).

*1. Threshold prongs*

*No historical right of access to filings and records in Article 32 preliminary hearings and court-martial proceedings*

Defendants assert that there is no "deeply rooted" right to contemporaneous access to filings and records in the military context of Article 32 preliminary hearings and court-martial proceedings. Def. MSJ at 35. Plaintiff does not deny that court-martial filings and records have not historically been contemporaneously made available to the public, and Plaintiff has no response to Defendants' point that *all* court-martial filings and records have historically "been subject to agency rules, the Privacy Act, and the FOIA, which was enacted in 1966." Def. MSJ at 37.

Instead, Plaintiff asserts that historical access to the filings and records of a proceeding cannot be considered separately from the underlying proceedings. Pl. Resp. at 16. Yet, in *Forbes*, the Ninth Circuit stated that there is a "carve-out" under the common law for "materials for which 'there is 'neither a history of access nor an important public need justifying access.'" *Forbes Media LLC v. United States*, 61 F.4th 1072, 1081 (9th Cir. 2023) (quoting *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1184-85 (9th Cir. 2006) (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)). "Thus, under the common law, records that have 'traditionally been kept secret for important policy reasons' are 'not subject to the right of public access at all.'" *Forbes*, 61 F.4th at 1081 (quoting *Kamakana* at 1178). The Ninth Circuit also stated that the analysis is the same under the First Amendment. *Id*. at 1082 ("And our cases indicate that, in considering that threshold question, the common law, like the First Amendment, turns on roughly similar considerations of historical tradition and the risks and benefits of public disclosure.") (citing *Kamakana*, 447 F.3d at 1184-85).

Plaintiff cites the Ninth Circuit's decision in *Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*, 117 F.4th 1200 (9th Cir. 2024), which did not concern filings and other records in court-martial proceedings. Plaintiff cites only a snippet from this decision, Pl. Resp.

-10-

at 16, failing to address that the Ninth Circuit narrowly held that "categories of documents" (medical records in the *Maile* case) will not be carved out in a proceeding based on whether that category of documents has been historically open to the public. *Id*. at 1209 ("We have never held that in making the threshold right of public access determination, courts should consider the categories of documents sought abstracted from the proceedings in which they were generated.") (quoting *Forbes*, 61 F.4th at 1083). The instant case concerns *all* filings and documents, not just a category. Plaintiff also failed to address any historic difference between the records at issue in *Maile*, a civil action, and the Article 32 preliminary hearing and court-martial records at issue here.

Plaintiff has no response to the Supreme Court's broad holding that a court "has supervisory power over its own records and files, and [that] access [may be] denied where court files might have become a vehicle for improper purposes," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), and the Ninth Circuit's ruling that "courts have inherent power, as an incident of their constitutional function, to control papers filed with the courts within certain constitutional and other limitations." *Matter of Sealed Affidavit(s)*, 600 F.2d 1256, 1257 (9th Cir. 1979).

Plaintiff has therefore failed to satisfy the first prong of the analysis, which entails "considerations of historical tradition and the risks and benefits of public disclosure." *Forbes*, 61 F.4th at 1082.

*Whether public access plays a significant positive role in the functioning of the particular process in question*

For the second prong, Plaintiff makes only a conclusory statement that a First Amendment right of access to proceedings and records will play a significant role in the functioning of military justice because it will give the public a better understanding of what is happening. ECF No. 88 (Pl. MSJ) at 29, 32, 45. Plaintiff does not explain how the public's "better understanding" plays any role in the system's functioning, much less a positive role. Def. MSJ at 37. Plaintiff merely repeats its stance as to documents

in Article 32 preliminary hearings, again without any explanation. Pl. Resp. at 19
("These records are crucial elements of the court-martial proceeding—indeed, the
report is submitted to the 'convening authority'—and of the public's understanding of
and faith in the military judicial process."). Indeed, contemporaneous access to Article
32 preliminary hearing and court-martial proceeding filings and records could play a
significant negative role by compromising privacy interests and national security. Def.
MSJ at 37. Plaintiff does not satisfy this threshold prong either.

If the first two prongs of the *Press-Enterprise* test are not satisfied, there is no
presumptive First Amendment right of access, and the Court need not apply the factors.
*See Courthouse News Serv. v. Planet*, 947 F.3d 581, 590 (9th Cir. 2020) ("A
presumptive First Amendment right of access arises if a proceeding or record satisfies
both requirements of the two-part test.").

### 2. Factors

*Compelling interest in national security*

As discussed above, Plaintiff's attempt to trivialize national security interests
defies abundant uncontroverted evidence that the interests are real and weighty.
Significantly, the opening paragraph of the MJRP's recent report to Congress
emphasized that "[a]ny reforms to our military justice system must balance the unique
requirements of the military and emerging challenges of national security with the
unchanging need to do justice" and warned of the "potential risk to national security of
seeking to replicate the practices of civilian criminal justice in the Armed Forces."
MJRP Report at 1; *see Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) ("This Court
has recognized the Government's 'compelling interest' in withholding national security
information from unauthorized persons in the course of executive business.").

This factor should weigh heavily against the qualified First Amendment right
asserted by Plaintiff.

///

///

*Privacy and the Privacy Act*

Plaintiff simply repeats its argument that the Privacy Act does not apply, but does not respond to Defendants' point that Congress clarified that the Privacy Act *does* apply to information made publicly accessible in accordance with Article 140a. Def. MSJ at 40. Defendants noted in their motion that DoD submitted two legislative proposals to Congress to amend Article 140a to expressly limit applicability of the Privacy Act of 1974, 5 U.S.C. § 552a, Exs. 26-30, and that Congress declined to enact such a provision. Def. MSJ at 19. The legislative history is illustrative:

> The Senate bill contained a provision (sec. 559) that would amend Article 140a of the Uniform Code of Military Justice (10 U.S.C. 940a) to clarify that . . . the Privacy Act (5 U.S.C. 552a) would not apply to courts-martial information made publicly available in accordance with Article 140a. . . . The House recedes with an amendment that would *maintain applicability of the Privacy Act* to records of trial produced or distributed within the military justice system, as well as to docket information, filings, and records made accessible to the public.

National Defense Authorization Act for Fiscal Year 2020, H.R. 116-333 (Conference Report) to accompany S. 1790, 116th Cong., 1st Sess., Dec. 9, 2019, at 1212 (emphasis added), available at https://www.congress.gov/congressional-report/116th-congress/house-report/333/1 (last visited Feb. 11, 2025).

Plaintiff is, in effect, asking this Court to legislate where Congress has, thus far, purposefully declined to do so.

Furthermore, Plaintiff suggests that the job of screening documents can be done "easily" by trial counsel (prosecutors) and defense counsel, Pl. Resp. at 21-22. DoD notes in its 2024 Feasibility Report that "it would not be sufficient for them to merely rely on the attorneys who upload information to a database to make the necessary redactions—the course followed by the PACER system that resulted in what one researcher called unredacted information 'horror stories.'" [4] Def. MSJ Exhibits at 93.

---

[4] The DoD feasibility report cites Judge Herbert B. Dixon Jr., *Embarrassing Redaction Failures*, Judges' Journal, May 1, 2019 (online at https://www.americanbar.org/groups/judicial/publications/judges_journal/2019/spring

Plaintiff's expert did not review or comment on the 2024 Feasibility Report, *see* ECF No. 89-1 at 555-56, and Plaintiff did not address it in their briefs.

The Privacy Act applies, so privacy interests weigh heavily against the qualified First Amendment right asserted by Plaintiff.

*Administrative burden*

As set forth above, Plaintiff does not address the fact that funding would be needed to carry out its sweeping proposal for contemporaneous access. Plaintiff responds only that Defendants have the burden of proving how much it will cost and that the DoD's 2024 Feasibility Report to Congress is not specific enough. Pl. Resp. 23-24. Regardless of how much it will cost, as discussed above, Congressional action may be required to appropriate funding earmarked for this purpose.

Plaintiff proposes that the system can be implemented by tasking trial counsel (prosecutors) and defense counsel to screen all filings. *See* Pl. Resp. at 21-22. But, tasking counsel with this responsibility will, among other things, compromise their ability to ensure swift justice for defendants. Temple Dep. 135:13-136:6. Indeed, DoD stated in its 2024 Feasibility Report that "Even with the necessary resources, reviewing every record of trial to redact all such information would significantly degrade DoD's ability to provide timely military justice." Def. MSJ Exhibits at 93. Again, Plaintiff's expert did not review or comment on the 2024 Feasibility Report. *See* ECF No. 89-1 at 555-56.

B. <u>ARTICLE 32 HEARING NOTICE MOOTNESS</u>

Plaintiff argues that the Article 32 hearing notice issue is not moot because Defendants "have refused to *commit* to providing such advance notice," Pl. Resp. at 14

---

/embarrassing-redaction-failures/); Timothy B. Lee, *Studying the Frequency of Redaction Failures* in PACER, FREEDOM TO TINKER, May 25, 2011 (online at https://freedom-to-tinker.com/ 2011/05/25/studying-frequency-redaction-failures-pacer/); Letter from Carl Malamud to the Honorable Lee H. Rosenthal, Chair, Committee on Rules of Practice and Procedure, Judicial Conference of the United States, Oct. 24, 2008 (online at https://law.resource.org/pacer/pacer.uscourts.gov/Exhibit.D.pdf).

(emphasis in original), yet Plaintiff acknowledges that Defendants "issued new Article 140a guidance on January 9, 2025, requiring the [S]ervices to begin publicly posting Article 32 hearings by July 8, 2025 . . . [with] three days' advance notice." *Id.* at 15. Even with such advance notice, Plaintiff remains dissatisfied, because "it takes at least a week, sometimes two weeks or more, to secure access to a base and travel there." Pl. Resp. at 15. Apart from whether the allegations are true, Plaintiff is asking the Court to micromanage the discretionary affairs of the Executive branch on a new, minor issue.

In addition, there is no evidence to support Plaintiff's voluntary cessation argument. The voluntary cessation principle applies only where there is "reasonable expectation that the wrong will be repeated." *Public Utilities Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996). Plaintiff's assertion that the Navy might change its guidance to restrict advance notice of Article 32 hearings is unfounded, speculative, and implausible, especially in light of the new DoD guidance. *See Williams v. Alioto*, 549 F.2d 136, 144 (9th Cir. 1977) ("A mere speculative possibility of repetition is not sufficient."). Updates to the UCMJ and Article 140a which expand public access to military justice proceedings and records have bridged various administrations and sessions of Congress. Plaintiff fails to offer any evidence that the executive and legislative branches plan to reverse course after more than a decade of seeking to increase transparency while balancing national security and privacy interests.

C. NO PRIVATE RIGHT OF ACTION

Plaintiff argues that it can seek mandamus relief even though there is no private right of action, overstating the holding in *Legal Aid Soc. of Alameda Cnty. v. Brennan*, 608 F.2d 1319 (9th Cir. 1979). In that decision, the Ninth Circuit noted that mandamus relief is nonetheless unavailable where the statute at issue "provide[s] explicitly only for government enforcement procedures and penalties." *Id.* at 1332. As Defendants point out in their motion, Article 140a makes "the Secretary of Defense responsible solely to Congress, which will appropriate funds as needed to replace existing infrastructures. That is not a relationship that Plaintiff or this Court is meant to enforce."

Def. MSJ at 14. Further, the legislative scheme expressly provides for congressional oversight, including periodic reporting on the implementation of Article 140a. *See id.* at 19-20. Plaintiff has no response to these points, which apply equally to non-justiciability and to the lack of a private right of action.[5]

D. <u>MANDAMUS CLAIM</u>

*1. No clear mandate*

Defendants discussed at length in their motion the fact that there is no clear mandate in Article 140a, because of the undeniably qualifying language "insofar as practicable," "appropriate to judicial proceedings and military records" and "best practices," all of which require the exercise of discretion by decision makers. Def. MSJ at 17-18, 31, 33. Plaintiff responds that this Court has already decided that issue. Pl. Resp. at 25 ("The Court denied Defendants' motion to dismiss based on that argument, finding Pro Publica plausibly alleged 'the Secretary . . . clearly failed to issue sufficient standards under [Article 140a]'").

In its March 4, 2024 decision, this Court decided only that Plaintiff had stated a plausible claim, noting that "denying the public access to court records in all cases ending in acquittals" might not be consistent with "the best practices of Federal and State courts." ECF No. 47 at 4. Defendants have now pointed out that this practice is consistent with the ruling in *ACLU v. U.S. DOJ*, 750 F.3d 927, 935 (D.C. Cir. 2014), and the testimony of Captain Temple explains why the practice is "appropriate to judicial proceedings and military records." Def. MSJ at 45 ("[the Navy's] policy also protects unit cohesion pending and during a court-martial"). This Court did not discuss the qualifying language about appropriateness in its March

---

[5] Plaintiff does not dispute Defendants' understanding that Plaintiff is not claiming any relief in this lawsuit specifically related to the Navy's decisions about what could be released in the *Mays* case. *See* Def. MSJ at 16 n.2. Defendants are not "faulting" Plaintiff for not seeking such APA relief, Pl. Resp. at 24; they are clarifying that Plaintiff is seeking only this Court's intervention in the decision-making process regarding the structure of the Navy's miliary justice system. By not disabusing Defendants of their understanding, Plaintiff is confirming that understanding. *Id.*

4, 2024 decision, and Plaintiff's only response is that little weight should be given to Captain Temple's testimony. *See* Pl. Resp. at 20-21. Surprisingly, Plaintiff does not discuss the *ACLU* decision at all in its response.

   2. *The Navy's practices comport with the best practices of federal and state courts*

   "[I]nsofar as practicable," the Navy's practices comport with the "best practices of federal and state courts," taking into account restrictions that are "appropriate to judicial proceedings and military records." Def. MSJ at 42-49. Plaintiff fails to demonstrate in its response that the Navy does not satisfy that standard.

   *Article 32 preliminary hearings*

   Defendants maintain that the Navy's policy regarding access to documents in Article 32 preliminary hearings is consistent with the best practices of comparable "show cause" proceedings in federal and state courts. Def. MSJ at 42-44. Plaintiff responds only in a footnote that the two types of hearings are not comparable because civilian show cause hearings are held in secret, whereas Article 32 preliminary hearings are open to the public. Pl. Resp. at 18 n.8. Plaintiff does not explain how that difference is material and, more importantly, does not identify comparable pre-complaint proceedings in federal and state courts. If there is no comparable proceeding, then there is no best practice to follow. Plaintiff ignores the important similarity that both Article 32 preliminary hearings and show cause hearings are pre-complaint proceedings and share the best practice of considering disclosure on a case-by-case basis.

   *Protecting privacy*

   Defendants maintain that the Navy's policy of providing access to court-martial filings and records on a case-by-case basis during an ongoing court-martial is consistent with the D.C. Circuit's conclusion in the *ACLU* case that releasing records of criminal proceedings resulting in acquittals "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *ACLU*, 750 F.3d at 935. Plaintiff, however, does not address the *ACLU* decision in any way in its response. Nor does Plaintiff

-17-

respond to Defendants' point that the legislative history makes clear that Congress clarified its view that the Privacy Act applies to Article 32 preliminary hearings and court-martial records.

Furthermore, as set forth in DoD's 2024 Feasibility Report: "While the Privacy Act applies to the Military Departments, it does not apply to the federal judiciary," and "[s]tudies have found that at least thousands (and probably tens of thousands) of documents available on the PACER system include sensitive personally identifiable information." Def. MSJ Exhibits at 93 (citing 5 U.S.C. § 552a and 5 U.S.C. § 551 (a)(B), respectively). Apart from the lack of any comparable practice in any court for screening Privacy Act-protected information, it remains uncontroverted that the Navy's centralized screening by experts constitutes the best practice.

*Screening filings for classified and other sensitive information*

Likewise, Defendants maintain that there is no comparable best practice in federal and state courts regarding the screening of documents for classified and other sensitive information before public release. Def. MSJ at 46 ("[U]nlike federal and state courts, [the Navy] must first screen documents for classified and other sensitive information before it publicly releases them."). Plaintiff does not respond to this assertion. As discussed above, Plaintiff only trivializes national security risks and states (incorrectly) that the task can easily be performed by trial counsel (prosecutor) and defense counsel.

In sum, Plaintiff has not demonstrated that the Navy has failed to comport "insofar as practicable" with the "best practices of federal and state courts," especially "taking into consideration restrictions appropriate to judicial proceedings and military records." 10 U.S.C. § 940a(a)(4).

E. <u>EVIDENTIARY OBJECTIONS</u>

Defendants object to the admissibility of eight declarations filed in support of Plaintiff's Motion for Summary Judgment as irrelevant and immaterial because the declarants are not parties to this action. Def. MSJ at 49. Plaintiff responds that the eight

declarations are relevant, citing irreparable harm, as they provide evidence of "the press's difficulty accessing Navy court records." Pl. Resp. at 26. This case is not about anecdotal difficulties; it is about the framework the Navy uses to facilitate public access to court-martial docket information, filings, and records, and about an inter-branch (Congress-Executive) process where Congress evaluated public access to court-martial records and assigned implementation of policies and procedures to the DoD with close congressional oversight. Further, Plaintiff's standing is based on its own alleged harm. If Plaintiff wanted to represent the press writ large in this case, there are mechanisms to do so. Plaintiff chose not to avail itself of these mechanisms, thus the only relevant evidence of harm is that allegedly suffered by Plaintiff; alleged harm suffered by non-parties is not relevant. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally."); *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, (9th Cir. 2011) ("Article III, however, requires a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties.")

Defendants also seek to exclude Plaintiff's expert's report and any future testimony because Mr. Crow's experience predates the current statutory, inter-branch decision-making process, making his testimony unreliable and irrelevant. Def. MSJ at 50. Plaintiff claims that "the enactment of new legislation does not undermine" its expert's insight. Pl. Resp. at 26. This Reply has shown that its expert's outdated insight and conclusory statements are not helpful to the Court, and further, that they are inconsistent with the military judgment of the government's expert. Plaintiff's expert did not even consider DoD's 2024 Feasibility Report.

F. <u>CONCLUSION</u>

For the reasons set forth above, this Court should dismiss this case for lack of subject matter jurisdiction under the political question doctrine, because it should not

-19-

interfere with an active inter-branch, decision-making process. That decision-making process requires the expertise of the DoD and the House and Senate Committees on Armed Services to address, as the MJRP stated: "the potential risk to national security of seeking to replicate the practices of civilian criminal justice in the Armed Forces." MJRP Report at 1.

In the alternative, Plaintiff's First Amendment claim should be rejected, because Plaintiff cannot satisfy the two threshold prongs of the analysis to establish a presumptive right of public access to the filings and other records in Article 32 preliminary hearings and court-martial proceedings. Apart from the lack of such a presumption, the compelling factors of national security and privacy weigh heavily against a qualified First Amendment right.

Also, mandamus relief should be denied, because the language of 10 U.S.C. § 940a(a)(4) provides for discretion and, regardless, Plaintiff has not demonstrated a failure to follow "insofar as practicable" the "best practices of federal and state courts," taking into account what is "appropriate to judicial proceedings and military records."

The Court should therefore dismiss this case or adjudge it in favor of Defendants. *See* Fed. R. Civ. P. 12(c), 12(h)(2)(B), 12(h)(3), 56(c).

DATED: February 11, 2025                    ANDREW R. HADEN
                                            First Assistant United States Attorney

                                            KATHERINE L. PARKER
                                            Chief, Civil Division

                                            s/ *Samuel W. Bettwy*
                                            SAMUEL W. BETTWY
                                            JULIET M. KEENE
                                            MARY CILE GLOVER-ROGERS
                                            ERIN M. DIMBLEBY
                                            Assistant U.S. Attorneys

                                            Attorneys for Defendants